WILLARD v. DAVIS et al.

(Circuit Court, D. Massachusetts. March 19, 1903.)

No. 1,706.

1. EQUITY PLEADING—ALLEGATIONS OF BILL—EFFECT OF EXHIBITS.

Where a bill makes general allegations, in support of which exhibits are attached, the allegations must be taken as qualified and limited by the exhibits.

2. RELEASE—GROUNDS FOR SETTING ASIDE.

A release by a formal instrument, executed under seal, between parties fully cognizant of their rights, and assuming on its face to dispose of the entire subject-matter to which it relates, will not be lightly set aside or added to; and, while a court of equity will not hesitate to grant such relief in a clear case of mistake, uncertain allegations or doubtful proofs are not sufficient to warrant its reformation.

3. SAME—REFORMATION—SUFFICIENCY OF BILL.

A bill for the reformation of a written instrument by which the members of a partnership transferred all their property to complainant, with other creditors, and the latter, in consideration of such transfer, released the partners from any further liability, alleged that it was a condition of the agreement that defendant's testator, one of the partners, should give complainant an obligation agreeing to pay so much of complainant's debt as should remain unsatisfied from the proceeds of the property transferred; that, while such obligation was never executed, the decedent recognized the agreement; and exhibits were attached in support of such allegation, consisting of a statement of account, showing that decedent had made interest payments for some years after the release was executed, and certain letters between the parties. The letters of decedent, however, contained no reference to any such previous agreement, nor was there anything in the exhibits showing that the interest payments were made in recognition of any legal obligation. There was no allegation that any demand was ever made on decedent in his lifetime to execute the obligation referred to, nor that the alleged agreement therefor was made with the knowledge and consent of the other creditors joining in the release. *Held* that, taking the bill in connection with the exhibits, it contained no such clear statement of the terms of the alleged agreement or of grounds for relief as would authorize the reformation of the release.

In Equity. Suit for reformation of release.

W. P. Sheffield, for complainant.

Thomas N. Perkins, for defendants.

PUTNAM, Circuit Judge. The complainant has a suit at common law in this court against the respondent, as executor of the will of Thomas H. Perkins, on an account of which the following is a copy:

¶ 1. See Equity, vol. 19, Cent. Dig. § 385.

Estate of Thomas H. Perkins, Deceased,

To E. W. Willard, Dr.

| | | | | | |
|---|---|---|---|---|---|
| 1888. | Jan. 1. | Debt of C. D. Head & T. H. Perkins assumed by Thomas H. Perkins .......................... | | | $21,764 70 |
| 1891. | June 3. | Received on account ................... $7,249 50 | | | |
| 1892. | June 3. | "      "      "      ................... 600 00 | | | |
| 1893. | Feb. 17. | "      "      "      ................... 4,447 43 | | | |
| 1901. | June 4. | Received from policy of insurance....... 1,741 93 | | | |
| | | | | 13,998 86 | |
| | | | | | $ 7,765 84 |
| 1888. | Jan. 1. | Interest received ...................... $1,193 10 | | | |
| 1889. | Jan. 12. | "      "      ...................... 1,088 23 | | | |
| 1890. | Jan. 18. | "      "      ...................... 1,088 23 | | | |
| 1891. | Jan. 1. | "      "      ...................... 1,088 23 | | | |
| 1892. | Jan. 1. | "      "      ...................... 878 78 | | | |
| 1893. | Jan. | "      "      ...................... 801 78 | | | |
| | | | | $6,198 35 | |
| 1894. | Jan. 1. | Interest unpaid ...................... $ 475 38 | | | |
| 1895. | Jan. 1. | "      "      ...................... 499 15 | | | |
| 1896. | " | "      "      ...................... 524 12 | | | |
| 1897. | " | "      "      ...................... 553 22 | | | |
| 1898. | " | "      "      ...................... 577 98 | | | |
| 1899. | " | "      "      ...................... 606 88 | | | |
| 1900. | " | "      "      ...................... 637 22 | | | |
| 1901. | " | "      "      ...................... 669 08 | | | |
| 1902. | " | "      "      ...................... 541 79 | | | |
| | | | | 5,084 82 | |

Due January 1, 1902..................................... $12,850 66

The indebtedness was originally that of the partnership of Head & Perkins, in which Thomas H. Perkins was a copartner, but by an arrangement with the creditor the debt had been assumed by Perkins alone. The defendant set up, as one of the defenses in the suit at law, a release, of which the following is a copy:

"This indenture made this twenty-eighth day of December, A. D. 1887, between Charles D. Head and Thomas H. Perkins, brokers and partners under the firm of C. D. Head & T. H. Perkins, of the first part, hereinafter called the first party, W. G. Weld, party of the second part, hereinafter called the second party, and the persons, creditors of said C. D. Head & T. H. Perkins, who shall execute these presents, of the third part, hereinafter called the third parties,

"Witnesseth. That the first party, in consideration of one dollar paid by the second party, the receipt whereof is hereby acknowledged, hereby sell, assign, transfer and convey to the said second party all and singular the assets and property of every description of the said firm of C. D. Head & T. H. Perkins, and each of the members of said firm, except the seat in the brokers' board of said C. D. Head.

"To have and to hold the same to the second party, his executors and administrators and assigns, in trust nevertheless to sell and convert the same into money in such manner and at such time, as he shall deem most advantageous, and the net proceeds thereof, to divide among the third parties, ratably in the proportion of their respective claims against the first party, without preference or priority.

"Any surplus remaining after the payment of said debts in full to be divided among the parties of the first part. And the first party hereby appoints the second party their attorney irrevocable, with full power in their names to do all and every act, make and execute all deeds and instruments of every

nature, which he may deem proper to enable him to dispose of and realize the assigned premises.

"And the second party accepts the assignment and trust herein and covenants faithfully to discharge the same.

"And the third parties hereby accept the foregoing conveyance and assignments in full satisfaction of their respective debts and demands against the first party, and in consideration thereof hereby release and discharge the said Charles D. Head & Thomas H. Perkins from all debts and demands which they and each of them have against them or either of them.

"In witness whereof the parties have hereto set their hands and seals the date first above written.

Charles D. Head.
"Thomas H. Perkins.
"Wm. G. Weld.
"E. W. Willard.
"B. P. Cheney."

Before the trial of the suit at common law, the complainant brought this bill, praying that the release be reformed to express the "true intent and meaning of the parties thereto," as stated in the bill, and that the defendant in the suit at law be enjoined from setting up the release as a defense thereto. The pith of the allegations of the bill is that, although the complainant, Willard, together with William G. Weld and B. P. Cheney, executed the foregoing release, it was upon an agreement that Perkins should give Willard an obligation providing, in some manner not clearly set out in the bill, for the ultimate payment of so much of Willard's debt as might not be satisfied out of the assets assigned in accordance with the release. The bill makes certain exhibits (H, I, and J) parts of it, in such way that they are not to be considered merely as evidence, but as qualifying and limiting the complainant's formal allegations. Those exhibits are a letter from Perkins to Willard of August 22, 1887, which was, of course, several months before the date on which the release was executed, namely, December 28, 1887, and is altogether too indefinite to need any further attention. Exhibit J is a letter from Willard to Perkins, dated January 2, 1888, in reply to Exhibit I, which was a letter from Perkins to Willard of January 1, 1888, to be further referred to. The letter of January 2d was also absolutely indefinite, but it is noticeable because, although it returned the release executed by Willard, it did not set out any understanding with reference to any further obligation on the part of Perkins to him. The letter of January 1st from Perkins to Willard inclosed the release, and stated that Perkins had given up all his property, and that anything further would depend on his honor and on his success. It contained other expressions, which are construed one way by the complainant and another way by the respondent, but which are too obscure and uncertain to aid us in applying the equity rules which we will hereafter explain, concerning bills for the rectification or cancellation of instruments under seal.

The account attached to the declaration at common law has been treated by the parties to this bill as though it was a part thereof. By that account it appears that Perkins paid Willard interest to and including January, 1893. With reference to this, the bill alleges that, after the execution of the release, Perkins continued to recognize the debt as due from him to the complainant, and continued to pay

out of his own personal funds, from time to time, the interest due thereon. It also alleges that Perkins verbally and in writing agreed to pay the balance of the debt, and that at his death he referred in his will, in general terms, to the indebtedness as an obligation which he wished paid from his estate. In this connection a copy of his will, marked "Exhibit K," is also referred to in the bill so as to be made a part thereof. The bill does not, however, allege how long Perkins continued to pay the interest, or set out any writings of importance, other than those already referred to.

It appears by the bill that Perkins died on the 30th day of June, 1900, and it is not alleged that he paid any interest, except as already stated, leaving, in that respect, a period of over six years unaccounted for. It is also nowhere alleged that, before his death, any request was made of Perkins to cancel the release, or to give any formal obligation in any way, as now claimed by the complainant, providing for payment of the balance of the debt now sued for.

To this bill the executor filed a general demurrer; and each of the residuary legatees of Perkins, having been joined in the bill as respondents, also demurred.

We pass by the question of laches, which affords some difficulties. We also pass by the question whether the bill is insufficient in not showing that the alleged arrangement between Perkins and the complainant was assented to by the other creditors who signed the release, or at least disclosed to them, or that there were any circumstances in connection therewith which would relieve the case as made by the bill from the well-known objection that it was against public policy, because not so assented to or disclosed.[1]

Sifting out the allegations which we have referred to, we find but little of substance. The will does not make any mention of the indebtedness in question here. Any agreement, whether oral or in writing, subsequent to the execution of the release, would have been without consideration, and therefore not binding in law, although it would be otherwise with reference to a discharge in invitum by formal proceedings in bankruptcy or insolvency. The allegations with reference to the payment of interest are not sufficiently definite to make them available even as evidence—much less, as a specific fact in recognition of the legal existence of the debt—because, for all that appears in the bill, they may have been made from a mere sense of honor; and, on the whole record, the allegation that Perkins continued to recognize the debt as still due from him cannot be regarded as sufficient for the purposes of the case. The only exhibit which can possibly bear on the case is the letter of January 1st, and nothing therein gave any assurance that Willard could rely on any future legal claim, or on anything except Perkins' sense of honor. Under the circumstances, this letter having been made a part of the bill, it must, in the absence of a specific statement of other details, which the bill lacks, be taken as qualifying all its general allegations

[1] Note by the Court. See Batchelder & Lincoln Co. v. Whitmore, 122 Fed. 355, decided by the Circuit Court of Appeals for the First Circuit on April 23, 1903.

which we have referred to, including that that Perkins continued to recognize the debt notwithstanding the execution of the release, and verbally and in writing agreed to pay the same.

There is enough in what we have already observed to require us to sustain the demurrers, but, in addition thereto, there are some general rules which underlie the whole bill. A release by a formal instrument, executed under seal, between parties fully cognizant of their rights, and assuming on its face to dispose of the entire subject-matter thereof, is not lightly to be set aside or added to, as is now asked for by the complainant. Although the rules of equity, in a case demanding it, do not hesitate to grant such relief as now prayed for, yet, as required by a proper regard for the rights of parties who have formulated their own contracts, they fully recognize the solemnity of an instrument of this character, and they will not disregard it unless justice clearly requires that they should do so. A case sounding in uncertain allegations or doubtful proofs is not sufficient. These rules appear all through the authorities, in various forms. Particularly does what is stated in Story's Equity Pleadings, § 255, apply here: "It is a general rule that whatever is essential to the rights of the plaintiff, and is necessarily within his knowledge, ought to be alleged positively and with precision." Also the following observations, although made in connection with a discussion of the weight to be given to oral proofs invalidating or modifying a written instrument, apply not only to the matter of estimating the value of evidence, but to the allegations to which evidence relates. Story's Equity Jurisprudence (13th Ed.) § 157, says: "Relief will be granted in cases of written instruments only where there is a plain mistake, clearly made out by satisfactory proofs." Likewise, Pomeroy's Equity Jurisprudence (2d Ed.) § 859, says: "Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of error." Taking the bill in this case in connection with the exhibits which are made parts of it, the terms of the alleged arrangement between the parties additional to the release are not clearly stated, nor are the grounds of the relief asked for clearly and positively set out in any respect.

Ordered: There will be a decree in accordance with rule 21, sustaining the demurrers, and dismissing the bill, with a single bill of costs.